UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00194-RJC

| | |
|---|---|
| **KELLY BRENT ENGLE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| **COMMISSIONER OF SOCIAL SECURITY** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (Doc. Nos. 12, 14). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Kelly Brent Engle ("Engle") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of his social security claim. Engle filed his applications for disability insurance benefits and supplemental security income on July 2, 2018, with an alleged onset date, as twice amended, of May 27, 2017. (Tr.[1] 16).

In denying Engle's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 19-31). At step one, the ALJ found that Engle had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 19). At step two, the ALJ found that Engle

---

[1] Citations to "Tr." throughout the order refer to the administrative record at Doc. No. 9.

had the following combination of severe impairments: Diabetes Mellitus (including diabetic neuropathy and chronic osteomyelitis of the right hand, including fingers), Degenerative Disc Disease, and Morbid Obesity (20 CFR 404.1520(c) and 416.920(c)). (*Id.* at 20). Additionally, the ALJ found the following impairments to be non-severe: hypertension, high cholesterol, gastroesophageal reflux disease, skin impairment (including cellulitis, intertrigo, gluteal abscess, tinea corporis, and edema not otherwise specified), nail-injury-to-foot (including ancillary infection and SIRS), Obesity Hypoventilation Syndrome (OHS), nicotine dependence, Obstructive Sleep Apnea (OSA), Depressive Disorder, and Anxiety Disorder. (*Id.* at 20-23). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 23). Before moving to step four, the ALJ found that Engle had the residual functional capacity ("RFC") as follows:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: no more than occasional pushing, pulling, and operating foot controls with the bilateral lower extremities; no more than occasional climbing of ramps and stairs; never climb ladders, ropes, or scaffolds; no more than occasional balancing, stooping, or crouching; no kneeling or crawling; avoid even moderate exposure to hazards such as uneven terrain, unprotected heights, or moving mechanical parts; no more than frequent handling and fingering and no more than occasional feeling with the bilateral upper extremities.

(*Id.* at 23-24). At step four, the ALJ found that Engle could not perform any past relevant work, but found at step five that Engle could perform jobs that existed in significant numbers in the national economy. (*Id.* at 29-31).

After exhausting his administrative remedies, Engle brought the instant action for review of Defendant's decision denying his application for disability benefits. (Doc. No. 1).

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the

Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Engle raises three challenges to the ALJ's decision: (1) the delegation of authority to the ALJ was unconstitutional; (2) in assessing Engle's RFC, the ALJ did not properly evaluate Engle's handling and fingering, obesity, and limitations on concentrating, persisting and maintaining pace ("CPP"); and (3) the ALJ failed to give substantial weight to the North Carolina Department of Health and Human Services ("NCDHHS") disability decision.

### A. ALJ's Authority

First, Engle argues the Social Security Act unconstitutionally restricts the President's removal of the Commissioner, and due to the unconstitutional structure of the Social Security Administration the authority vested in the ALJ by the Commissioner was unconstitutional. Thus, Engle asks the Court to remand his case for a new hearing. Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (Doc. No. 15 at 5). But Defendant contends a new hearing is not necessary because Engle was not harmed by the unconstitutional statutory removal restriction. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

The Supreme Court held in *Seila Law v. Consumer Financial Protection Bureau*, that Congress cannot limit the President's power to remove the Director of the Consumer Financial Protection Bureau to instances of "inefficiency, neglect, or malfeasance." *Seila Law v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). It reached a similar conclusion the next term in *Collins v. Yellen*, concluding the Federal Housing Finance Agency's (FHFA) structure unconstitutionally violated the separation of powers because the statute restricted the President's removal authority of the single Director "for cause." *Collins*, 141 S. Ct. at 1787. Here, Plaintiff argues like *Seila Law* and *Collins*, the Social Security Act violates the separation of powers because the statute restricts the President's removal of the Commissioner. 42 U.S.C. § 902(a)(3). ("An individual

serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."). On July 8, 2021, the Justice Department's Office of Legal Counsel (OLC) issued an opinion that the removal restriction for the Commissioner violates the separation of powers in light of *Seila* and *Collins* and concluded the President may remove the Commissioner at will, notwithstanding the statutory removal limitation. *The Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. ––––, slip op. (July 8, 2021).

However, in *Collins*, after the Supreme Court concluded the FHFA's structure was unconstitutional, it explained that because the Director who headed the FHFA was properly appointed there was "no reason to regard any of the actions taken by the FHFA . . . as void" and explained that plaintiffs are not entitled to retrospective relief without showing the unconstitutional provision "inflict[ed] compensable harm." *Collins*, 141 S. Ct. at 1787-89. In other words, "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office" when he is properly appointed simply because of the unconstitutional restrictive removal provision; rather, for retroactive relief plaintiffs must show they were harmed by the unconstitutional provision. *Id.* at 1788 n.23. The Supreme Court provided examples of when the statutory removal restriction may cause harm even with a properly appointed director. For example, if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal" or the "President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1788. The case was remanded for the lower courts to decide in the first instance whether the unconstitutional removal restriction caused harm to the plaintiffs. *Id.* at 1789.

Applying these principles to the social security context, "a plaintiff must demonstrate some nexus between the removal protection and the injury [he] alleges in order to present a cognizable challenge to the constitutionality of the Social Security Commissioner's for-cause removal protection." *Satterthwaite v. Kijakazi*, No. 3:20-cv-724-MOC, 2022 WL 468946, at *3 (W.D.N.C. Feb. 15, 2022).

Here, Engle convincingly argues the Social Security Act's restrictive removal provision is unconstitutional. However, the existence of the unconstitutional removal provision alone does not entitle Engle to a new hearing. Engle fails to show how he was harmed by the restrictive removal provision. Engle's reply brief makes two conclusory arguments as to how he was harmed. First, he argues "harm was presumed without the need for causation in claims involving the violation of separation of powers." (Doc. No. 16). Next, he argues "the reasons for Saul's firing showed the possibility of compensable harm. There is a strong possibility that Engle was wrongfully deprived of his due process rights through Saul's politicization and undermining of disability benefits during his tenure." *Id.* He fails to cite any legal authority or otherwise show the Court how he was harmed aside from making conclusory statements that "[t]here is a strong possibility" he was harmed. Neither are sufficient to demonstrate that he was harmed to entitle him to a new hearing.

Engle also relies on *Lucia v. SEC*, to support his argument that he is entitled to a new hearing; however, *Lucia* is inapposite. 138 S. Ct. 2044 (2018). In *Lucia*, the plaintiff challenged administrative proceedings before the Securities and Exchange Commission (SEC) arguing that the ALJ was unconstitutionally appointed. *Id.* at 2053-55. The Supreme Court concluded the ALJ was improperly appointed and remanded for a new hearing before a properly appointed ALJ. *Id.* However, this case is more similar to *Collins*. The thrust of Engle's argument is not that the ALJ was improperly appointed, but rather that the Social Security Act's removal restriction is

unconstitutional. Because Engle has not demonstrated a nexus between the statutory removal protection and his alleged injury, he is not entitled to a new hearing.[2]

### B. Engle's RFC

Next, Engle argues that in assessing his RFC, the ALJ did not properly evaluate Engle's handling and fingering, obesity, and limitations on CPP. "The determination of eligibility for social security benefits involves a five-step inquiry." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). "The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of [one of certain listed] impairments . . .; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Id.* at 653 n.1; 20 C.F.R. § 404.1520. Before the fourth step, the ALJ determines the claimant's RFC, which is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ first assesses the nature and extent of the claimant's physical and mental limitations and restrictions and then determines the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). The RFC should be assessed "based on all the relevant evidence in [the claimant's] case record" and considering all of the claimant's medically determinable impairments. 20 C.F.R. § 404.1545(a).

---

[2] Defendant also argues Engle is not entitled to a new hearing for various other reasons including harmless error, the de facto officer doctrine, the rule of necessity, and prudential considerations, which the Court need not consider in light of finding Engle failed to demonstrate any harm or a nexus between the removal restriction and his alleged injury.

1. Frequent Handling and Fingering

With regard to the ALJ's RFC assessment, Engle first argues the ALJ did not explain how she came to the conclusion that he has the ability to handle and finger frequently rather than occasionally. However, the ALJ's assessment thoroughly analyzed the relevant evidence and explained how she determined Engle's RFC, including his ability to handle and finger frequently. The ALJ considered Engle's daily activities, including that he works on his car, performs household chores, and plays video games, and acknowledged Engle's claims that paresthesia and difficulty feeling with his hands interfered these daily activities. (Tr. 24-25, 27). She observed that some of his allegations were consistent with the medical evidence, including that Engle has reconstructive hardware in his hands and signs of paresthesia and diabetes-related chronic upper extremity infection. (*Id.* at 24-25). However, the ALJ noted that the limited effects of his symptoms are not entirely consistent and with the evidence and more conservative than Engle alleged. (*Id.* at 25-26). The ALJ explained

> The record contains little in the way of regular and long-term signs of bone infection . . . imaging-confirmed arthritic defects in this case, and much of what does exists shows early and low-level defects which are not commensurate with the extreme allegations . . . . Similarly, the record does not contain regularly updated nerve study results, or show nerve study test results that have been commensurate with full extent of the allegations over the long-term.

(*Id.*). She noted that many of the Engle's allegations correspond with "short-term and unrepresentative periods of injury/infections," and that Engle's "medical sources usually described him as objective normal, as unremarkable, or as having only minor objective clinical abnormalities in areas like . . . strength, sensation, reflexes, range of motion, and coordination/dexterity." (*Id.* at 26). The ALJ also gave partial weight to the prior ALJ's decision, including that the prior ALJ "found that the claimant had several postural, manipulative, and environmental restrictions, including a reduction to frequent handling, fingering, and feeling." (*Id.* at 27). She observed the

"need for exertional, postural, manipulative, and environmental limitations are generally consistent with above-outlined factors like the confirmed hand/foot diabetes-related infections, the confirmed spine arthritis, and the confirmed need for nerve-pain-blocking medications" and also added additional limitations to better account for Engle's combination of impairments including pain and obesity. (*Id.*). In sum, the ALJ adequately connected the evidence to her conclusion when reaching Engle's RFC.

### 2. Obesity Limitations

Plaintiff next argues the ALJ did not fully account for Engle's obesity as required by Social Security Ruling ("SSR") 19-2p. ALJs are required to consider the "limiting effects of obesity when assessing a person's RFC," alone and in combination with other impairments. SSR 19-2p. And "[a]s with any other impairment" the ALJ is required to "explain how [she] reached [her] conclusion on whether obesity causes any limitations." Here, the ALJ found Engle's morbid obesity to be a severe impairment, and considered his obesity alone and in combination with other impairments when determining his RFC. (Tr. 20). For example, the ALJ noted that Engle's combination of impairments, including his obesity, supported Engle's allegations, acknowledging SSR 19-2p, and noting "obesity can both cause limitations and aggravate other impairments beyond what the record would otherwise support –e.g., extra weight on diabetic feet." (*Id.* at 25). When considering the state agency's physical opinion she noted further exertional limitation than the opinion gave were required to "better account for the impact of obesity and the additional evidence about diabetic-foot abnormalities and treatment." (*Id.* at 28). However, in considering the medical evidence the ALJ noted Engle's "longer-term modalities have instead generally involved routine and little-changed outpatient medication management and monitoring services" and "the prevalence of conservative long-term modalities even despite mixed compliance with

dietary instructions" were consistent with the RFC. Accordingly, the ALJ considered Engle's obesity and adequately explained how she reached his RFC.

### 3. Mild Limitation in Concentration, Persistence, and Maintaining Pace

Engle last argues the ALJ found he had a mild limitation in CPP at step two, but did not account for the limitation in assessing Engle's RFC. "[T]he ability to perform simple tasks differs from the ability to stay on task." *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* However, there is not "a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may explain why an RFC limitation related to a claimant's CPP limitations is unnecessary, "[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it" from the RFC. *Id.* This inquiry is made on a case-by-case basis. *Shinaberry*, 952 F.3d at 122. So long as an ALJ's RFC assessment is supported by substantial evidence in the record, and other inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ met his *Mascio* duty. *Mascio*, 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Thus, remand for lack of discussion is appropriate only if the ALJ's opinion is "sorely lacking in a manner that frustrates meaningful review." *Hubbard v. Berryhill*, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (internal quotations omitted).

However, *Mascio* does not per se require all restrictions, including mild restrictions, to be discussed in functional terms; thus, the ALJ's assessment here does not contravene *Mascio*. *Thorp v. Berryhill,* No. 3:16-CV-00070-RJC, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018). The ALJ did assess Engle's mental limitations when determining his RFC. The ALJ found persuasive the state agency opinions that Engle's mental limitations are non-severe. (Tr. 28). She also noted that the global record was not consistent with long-term mental severity and that Engle's medical sources "typically described his objective mental clinical signs [as] being unremarkable (i.e., silent) or benign," including alertness, attention, and concentration. (*Id.*). Thus, his mental limitations did not translate into any CPP limitations in his RFC and the ALJ sufficiently explained how she reached her conclusion.

### C. NCDHHS Decision

Finally, Engle asserts the ALJ erred by not giving substantial weight to a NCDHHS disability decision. However, the document Engle asserts the ALJ did not give substantial weight to is not a NCDHHS disability decision. (Tr. 326-27). Rather it is a summary document with Engle's subjective description of his impairment. Engle in effect agrees in his reply brief, stating "[w]hile the DHHS summary was based on Engle's subjective descriptions of his impairments . . . part of the criteria for judging whether substantial evidence was present to support the Commissioner's decision is subjective evidence of pain and disability as testified to by the claimant." (Doc. No. 16 at 5). In other words, he argues the ALJ should have considered Engle's subjective description of his impairments. But the ALJ did consider and discussed in detail Engle's subjective description of his impairments in the decision. Therefore, Engle failed to demonstrate

how the ALJ erred in not giving substantial weight to a summary sheet of Engle's own description of his impairments.[3]

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: March 28, 2022

Robert J. Conrad, Jr.
United States District Judge

---

[3] Because the Court concludes for the reasons stated herein that the ALJ did not err, it need not decide whether ALJs are required to give substantial weight to NCDHHS under the new regulations. But the Court observes that for applications filed after March 27, 2017, the regulations provide that ALJs are not required to give the NCDHHS disability rating substantial weight. Instead, the ALJs only have to consider the evidence underlying the decision. 20 C.F.R. § 404.1504. This Court previously determined in the context of VA disability ratings that based on *Chevron* and its progeny the new regulation controls over *Bird v. Commissioner*, 699 F.3d 337, 338 (4th Cir. 2012). *Rogers v. Commissioner*, 3:20-cv-00206-RJC-DSC, 2022 U.S. Dist. LEXIS 7077, at *6–13 (W.D.N.C. Jan. 13, 2022). The Fourth Circuit in *Woods v. Berryhill*, 888 F.3d 686 (4th Cir. 2018), relying on *Bird* and interpreting the prior regulations, held that substantial weight should be given to NCDHHS decisions. While *Woods* was decided after the new regulations became effective, it similarly to *Bird*, interpreted the Social Security Administrations prior regulations. Indeed, the Fourth Circuit acknowledged in Woods that "[t]his regulation only applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, ALJs must still consider the existence of disability decisions by other governmental or nongovernmental entities, and any evidence underlying those decisions, but are no longer required 'to provide written analysis about how they consider the decisions from other governmental agencies.'" *Id.* at 691 n.1.